UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RICKY BEKHAM, | Case No.: 5:08 CV 1570 |
| Plaintiff | |
| v. | JUDGE SOLOMON OLIVER, JR. |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant | <u>ORDER</u> |

This is an action for judicial review of the Administrative Law Judge's ("ALJ") decision, denying Plaintiff Ricky Beckham's ("Plaintiff" or "Beckham") claims for disability benefits and supplemental security income.  The ALJ found that Beckham has severe impairments consisting of degenerative joint disease of the cervical spine, high tone hearing loss, gastroesophageal reflux disease, alcoholic liver disease, vertigo, a cognitive disorder, a depressive disorder, a history of polysubstance abuse, and alcohol dependence.  (Transcript ("Tr.") at 25.)  However, the ALJ determined that Beckham retained the residual functioning capacity ("RFC") to do unskilled sedentary work.  (*Id.* at.)  While the ALJ made determinations with regard to both his mental and physical RFC, Plaintiff challenges only the mental RFC finding.

Now pending before the court is the Report and Recommendation ("R&R") of Magistrate Judge David S. Perelman (ECF No. 14), who recommends that the court affirm the decision of the ALJ.  Thereafter, Plaintiff filed an Objection to the R&R (ECF No. 15), reasserting his challenges

to the ALJ's mental RFC determination. The court adopts in part and rejects in part Magistrate Judge Perelman's R&R, and reverses the decision of the ALJ and remands the case to the Commissioner of Social Security for further proceedings consistent with this Order.

## I. FACTS AND PROCEDURAL HISTORY

### A. Beckham's Background

Beckham worked as an auto mechanic until September 22, 2002, when he was involved in a serious motorcycle accident. At that time of the accident, he was not wearing a helmet and was under the influence of alcohol, benzodiazepine, and cocaine. As a result of the accident, he suffered "intraparenchymal hemorrhage, subarachnoid hemorrahage, intraventricular hemorrhage, and multiple facial and skill fractures." (Pl.'s Br. at 3, citing Tr. at 262, 269.) On November 15, 2002, Beckham applied for disability benefits and supplemental security income. (Tr. at 59.) These applications were denied initially and thereafter on reconsideration. Beckham filed a request for hearing, and a hearing was held on December 7, 2005 before the ALJ.

### B. Medical Evaluations and Hearing Testimony

Prior to the hearing, Beckham was evaluated by several medical professionals. In September of 2003, Beckham underwent a psychological evaluation by Dr. Gary J. Sipps ("Dr. Sipps"). Dr. Sipps found that his ability to "concentrate and attend to task would appear to be low average," as well as "[h]is capacity for understanding." (Tr. at 424.) He further found that he was mildly impaired in his ability to understand simple directions, mildly impaired in his ability to direct his attention effectively to tasks at hand for a reasonable amount of time, and moderately impaired in his ability to relate with the general public, supervisors, and co-workers. (*Id.*) He also concluded

-2-

that he did not require supervision in the management of his daily activities and does participate in some household responsibilities. (*Id.*)

The following month, Beckham was evaluated by a state agency pscyhologist, Dr. Patricia Semmelman ("Dr. Semmelman"), who determined that he suffered from mild restrictions in daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (Tr. at 431.) She also noted that his "concentration and attention is mildly impaired," that "[h]e can sustain concentration and attention for at least simple repetitive routine tasks," and that he could work in a smaller setting without supervision where he learns a routine task even though it may take him longer to learn the task. (Tr. at 435.) She further stated that his driving privileges were returned and that he does drive by himself. (*Id.*)

On January 13, 2004, Dr. Gregg A. Martin ("Dr. Martin"), a rehabilitation and neuropsychologist, evaluated Beckham. (Tr. at 484.) In his report, he concluded, based on his testing, that he suffers from mild to moderate deficits in attention, working memory, and verbal and nonverbal judgment and reasoning. (Tr. at 493.) He noted that while these limitations are consistent with his accident, that it is also possible that his continued alcohol abuse contributes to these limitations. (Tr. at 494.) He stated, however, that he does not believe that alcohol is the primary reason because "it tends to result in short-term memory problems more so than any other type of deficit." (*Id.*) Dr. Martin also noted some concern with Beckham's effort through two of the tests, but concluded that if he had "attempted to 'fake bad,'" that it had no effect on the conclusions of his examination. (*Id.*) He stated, with regard to Beckham's work abilities, that he could not work on machines that present safety issues as he is "prone to distractibility." (Tr. at 484.) He further

concluded that he did not "believe that Mr. Beckham [would] return to work," concluding that all of his impairments "leave him feeling completely disabled." (*Id.*)

At Beckham's hearing held before the ALJ on December 7, 2005, Dr. James Morgan Parker ("Dr. Parker") testified as a medical expert ("ME"). Prior to testifying, he reviewed Beckham's file, including the evaluations of Drs. Semmelman and Sipps, but did not have the benefit of Dr. Martin's neuropsychological report. (Tr. at 578.) Dr. Parker testified that despite Beckham's accident he made significant improvements. (Tr. at 579.) He noted that Beckham retained useful hearing, and that while he had demonstrated some memory issues, those issues might have been aggravated by his alcohol use. (Tr. at 579-80, 584.) Dr. Parker discussed at length these other physical conditions of Beckham. However, the portion of the transcript regarding Beckham's mental condition, which includes his testimony on his cognitive impairment, is mostly inaudible. (Tr. at 582-83.) The ALJ, in summarizing Dr. Parker's testimony, noted that he said "the claimant had some cognitive deterioration associated with a traumatic brain injury as a result of his motorcycle accident." (Tr. at 18.)

At the hearing, the ALJ also heard testimony from Lynn Kauffmann, a vocational expert ("VE"). (Tr. at 586.) She first stated that based on the limitations described by Dr. Parker, Beckham could not perform in his previous employment as an automobile mechanic. (Tr. at 587.) The ALJ then proposed a hypothetical to her, asking her to provide her projection on the jobs available to Beckham based on his age, education, prior work experience, and the testimony of Dr. Parker regarding his limitations. (Tr. at 587-88.) The VE testified that there were a total of 1,200-1,300 unskilled, sedentary jobs in the region that he could perform based on this testimony and these considerations. (Tr. at 588.) The ALJ then slightly changed the hypothetical, asking her as follows:

  Q . . . [J]ust add one other limitation that would be in moderate limitation with difficulties maintaining concentration and persistence in pace. And, I would define moderate in this regard to be, he would have difficulty at least one-third of the time, as much as fifty percent of the time. How, if at all, would that affect his ability to perform the jobs you previously listed?

  A I don't think he could. I think he would not [INAUDIBLE].

  Q Can you explain why?

  A Well, he already, you know, the range is already significantly limited and then I think if you're not able to concentrate, persist, keep up with pace, then definitely, you know, you're just not going to be able to, I think.

(Tr. at 589.)

### C. ALJ Decision

On January 24, 2007, the ALJ issued his decision, denying Beckham's application for disability benefits and supplemental security income. (Tr. at 26.) In his decision, he first evaluated the medical testimony of the experts and other exhibits pertaining to Beckham's health that were before him. He determined that the evaluation of Dr. Martin was not "accurate and persuasive," and the ALJ rejected his findings that Beckham "could not return to work and that the combination of his impairments would render him completely disabled." (Tr. at 22.) The ALJ found that Dr. Martin's conclusion was based upon Beckham's physical limitations, while he was only qualified to opine on Beckham's mental health. Also, he concluded that Dr. Martin based his opinion that Beckham is disabled "in significant part upon the claimant's alcohol dependence disorder." (*Id.*) He noted that if alcohol is the basis of a disability finding, the claimant must be denied benefits under Section 223(d)(2) and 1614(a)(3)(j) of the Social Security Act.

After having considered the evaluations of Dr. Parker, Dr. Semmelman, and Dr. Sipps, the ALJ made its mental and physical RFC determinations, which is stated in full below. (Tr. at 21-22.) He then turned to the opinion of the VE. (Tr. at 24.) He noted that when she was asked whether there were jobs available to Beckham based on the "previously described residual functional capacity," she testified that such an individual would have approximately 1,200 to 1,300 job options. (*Id*.) Based on this testimony, he concluded that Beckham was not under a "disability" because there were a significant number of jobs existing in the economy that he could perform. (Tr. at 25.)

The ALJ then summarized his findings as follows:

> 1. The claimant met the disability insured status requirements of the Social Security Act on September 21, 2002, the date he stated he became unable to work, and he continues to meet them through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since September 21, 2002.
>
> 3. The objective medical evidence establishes that the claimant has "severe" impairments best described as degenerative joint disease of the cervical spine; a high tone sensorineural hearing loss; gastroesophageal reflux disease; alcoholic liver disease; vertigo; a cognitive disorder not otherwise specified status-post head injury sustained in a motorcycle accident; a depressive disorder not otherwise specified; a history of polysubstance abuse; and alcohol dependence, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 to Subpart P of Regulations No. 4.
>
> 4. The claimant's testimony regarding his limitations was credible to the extent that he has severe impairments. However, for the reasons stated in the body of this decision, the claimant's testimony was not credible to show that he is incapable of all work activity at any exertional level.
>
> 5. The claimant retains the physical residual functional capacity for carrying no more than 10 pounds. The claimant can sit without restriction as long as he has the opportunity to stand as necessary. He can stand for 1 to 2 hours total during an eight-hour workday with

>breaks. He can occasionally bend and stoop. He can occasionally reach. He can occasionally push and pull hand controls and operate foot controls. He is restricted to work in a nonnoisy environment and must avoid chemicals/toxins. He must additionally avoid hazards such as work at unprotected heights and being around dangerous machinery. *The claimant retains the mental residual functional capacity to perform work having a mildly impaired ability to understand simple directions; a moderately limited ability to comprehend complex material; a mildly impaired immediate memory and working memory; a mildly impaired ability to direct his attention effectively to tasks at hand for reasonable periods of time; a moderately impaired ability to relate with the general public, supervisors and co-workers; and mildly impaired ability to respond appropriately to novel situations and to variations in a work setting.*
>
>6. The claimant is unable to perform any past relevant work based on his current residual functional capacity.
>
>7. The claimant is a younger person with a limited education.
>
>8. Although the claimant has a history of skilled work, he has not acquired transferable skills to other skilled or semi-skilled work within his residual functional capacity.
>
>9. Taking into consideration the claimant's vocational profile and his residual functional capacity and using Rules 201.25 and 201.19 of Table No. 1 of Appendix 2 to Subpart P of Regulations No. 4 as a framework for decisionmaking, together with the testimony of the vocational expert, the claimant is not disabled.
>
>10. The claimant has not been under a "disability" as defined in the Social Security Act at any time since the alleged onset date of September 21, 2002 pursuant to 20 CFR 404.1520(g) and 416.920(g).

(Tr. at 25-26., emphasis added)

### D. Beckham's Challenges to ALJ Decision

Beckham, in his Brief on the Merits (ECF No. 12), argues that the ALJ committed two errors for which reversal or a remand of the case is necessary. First, he argues that the ALJ's mental RFC determination was improper and not supported by substantial evidence. Specifically, he maintains

that the mental RFC only describes his limitations as opposed to describing "what Plaintiff can or cannot do despite his limitations." It also does not otherwise conform to the requirements of 20 CFR §§ 404.1520a and 416.920a, as it does not include a finding with regard to Beckham's ability to maintain "concentration, persistence, or pace." (Pl.'s Br. on the Merits at 10.) He further maintains that the mental RFC determination was erroneous because the ALJ did not find a moderate impairment of Beckham's concentration despite the testimony of Dr. Semmelman and Dr. Sipps and his own acknowledgment of this testimony in his decision. Lastly, he maintains that the ALJ improperly rejected the decision of Dr. Martin, as his opinion properly bore on Beckham's mental impairments.

Second, Beckham argues that the ALJ's conclusion that he could perform jobs in significant numbers despite his mental and physical RFC is not supported by substantial evidence. He maintains that the VE was not presented with any mental limitations when she opined that there were over a thousand jobs available to Beckham, and that the mental limitations described in the ALJ's decision were added after the hearing and were not presented to the VE for further projections.

### E. R&R and Beckham's Objections

In the R&R, Magistrate Judge Perelman concluded that Beckham's argument that the ALJ improperly rejected Dr. Martin's evaluation was not well-taken. He also found that there was substantial evidence supporting the ALJ's determination that Plaintiff does not suffer from impairments that preclude all of his work activities. He, therefore, concluded that the ALJ's determination that he was not suffering from a disability was within his "zone of choice." (R&R at 12) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thereafter, Beckham filed an Objection to the R&R, claiming that the Magistrate Judge failed to address the arguments raised in

his brief, except for the validity of Dr. Martin's report, which he claims was also determined in error. The court addresses Plaintiff's arguments and reviews the ALJ's determination below.

## II.  STANDARD OF REVIEW

Judicial review of the Commissioner's decision is authorized by 42 U.S.C. § 405(g), which provides, in pertinent part, that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971); *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). Therefore, judicial review is limited to determining whether the ALJ, who issued the final decision in this case, applied the correct legal standard in reaching his decision and whether there is substantial evidence in the record to support his findings. 42 U.S.C. § 405(g); *Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

In considering whether substantial evidence supports the ALJ's decision, this court is bound to "a very narrow scope of review." *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989). The court must affirm the ALJ's decision if his findings and inferences reasonably drawn from the record are supported by substantial evidence, even though some evidence may also support Plaintiff's claims. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If substantial evidence supports the ALJ's decision, the Court may not inquire "whether the record could support a decision the other way." *Smith*, 893 F.2d at 108.

Pursuant to the Social Security Act, an individual is qualified for disability benefits and supplemental security wherein the person has an "inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. 423(d)(1)(A). To make this determination, the Commissioner of Social Security has developed a five-step sequential analysis as follows:

> At step one, if a claimant can perform substantial gainful activity, she is not considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). At step two, if a claimant does not have a severe medically determinable physical or mental impairment (i.e., a condition that significantly limits her physical or mental ability to do basic work activities) that meets the duration requirement in § 404.1509 (longer or expected to be longer than a continuous period of at least 12 months), or a combination of impairments that is severe and meets the duration requirement, then she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii) and (c). At step three, a claimant will be considered disabled if she has an impairment that meets or equals one of the Commissioner's listings and the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). Between steps three and four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), which is the most a claimant can do despite her limitations. 20 C.F.R. §§ 404.1545 and 416.945. At step four, the Commissioner will determine, based on the claimant's RFC and past relevant work, that she is not disabled if she can still perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). Finally, at step five, the Commissioner assesses the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). If not, she is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

*Simpson v. Comm'r of Soc. Sec.*, No. 08-3651, 2009 U.S. App. LEXIS 19206, at *18-*19 (6th Cir. Aug. 27, 2009). In the instant case, the ALJ's mental RFC determination as well as step five, whether claimant can make an adjustment to other work, are at issue.

### III.  LAW AND ANALYSIS

Based on Plaintiff's initial brief and his Objections to the R&R, the court considers the following three issues in turn: (1) the ALJ's decision to reject Dr. Martin's evaluation of Beckham; (2) the sufficiency of the ALJ's mental RFC determination; and (3) the ALJ's reliance on the VE's projection as stated in the hearing.

### A. Rejection of Dr. Martin's Evaluation

Plaintiff first argues that the ALJ improperly rejected Dr. Martin's evaluation. While it is true that the ALJ must provide a reasoned basis for rejecting a treating physician's opinion (*see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)), the same rule has not been established for consulting physicians such as Dr. Martin. *See Short v. Astrue*, No. 07-232, 2008 U.S. Dist. LEXIS 65242, at *6 (E.D. KY Aug. 25, 2008) (noting that the rule articulated in *Wilson* only controls a treating physician and not an examining source). The ALJ is only required to "explain in his decision the weight given to the opinions of a State agency medical or psychological consultant." *Id.* (quoting 20 C.F.R. § 404.1527(f)(2)(ii)). In the instant case, the ALJ explained that he gave "careful consideration" to the opinion of Dr. Martin, but that he rejected the evaluation as inaccurate and unpersuasive, largely because he found that Dr. Martin's opinion was substantially based on Beckham's alcohol dependence disorder, which cannot serve as a basis for disability. (Tr. at 22.) The court finds that the Magistrate Judge's determination in the R&R on this issue is fully supported by the record and applicable case law, and therefore adopts this portion of the R&R. Accordingly, the court rejects Plaintiff's argument that the ALJ erred by rejecting Dr. Martin's evaluation.

### B. Sufficiency of the Mental RFC Determination

Plaintiff also maintains that the ALJ erred in articulating his mental RFC by failing to properly describe what Beckham can do despite his limitations and failing to use the precise language called for in 20 CFR §§ 404.1520a and 416.920a. The court disagrees with Plaintiff's assertion that the ALJ erred in the way in which he articulated Beckham's RFC. An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 786 (6th Cir. 2009). While the RFC describes what abilities the claimant has and not what the claimant is suffering from, "the maladies will certainly inform the ALJ's conclusions about the claimant's abilities." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007).

In the instant case, the ALJ's mental RFC indicates that while Beckham has some moderate limitations on his ability to understand complex material and relate to others, he still has the ability, with only mild impairment, to understand simple directions, direct his attention to tasks for a reasonable period, and respond appropriately to new situations in a work environment. The ALJ's description properly describes Beckham's abilities to work as well as the limitations that he may face. The court, therefore, rejects Plaintiff's initial argument.

In his next argument, Plaintiff maintains that the ALJ failed to use the precise language required by 20 CFR §§ 404.1520a and 416.920a, i.e., that he failed to include in his mental RFC a determination regarding "concentration, persistence, or pace," one of the functional areas discussed in the regulations for determining the mental limitations of a claimant. While the court does not find that the ALJ was required to use this exact language as Plaintiff suggests (*see Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)), the court agrees that the mental RFC has no

description relating to concentration, persistence, or pace, which appears to be a significant issue as it relates to Beckham.

At Beckham's hearing, the VE, in providing her projections, specifically noted that if Plaintiff was moderately limited with regard to concentration, persistence, or pace, in her opinion, he would not be employable. (Tr. at 589.) In the body of the ALJ's written opinion, he first accepts that the medical evaluations demonstrate that he is moderately limited in concentration, persistence, or pace. (Tr. at 21.) In the ALJ's ultimate mental RFC, however, he merely notes that Plaintiff is mildly impaired in his ability to direct his attention. The ALJ does not relate this determination to his discussion on concentration, persistence, or pace. Consequently, it may arguably be read as directly contradictory of his determination regarding concentration, persistence, or pace in the body of his opinion. The inconsistencies between the language in the body of his opinion and the mental RFC make the ALJ's determination on this issue unclear. Based on the testimony of the VE, the issue of Beckham's ability to concentrate and keep persistence or pace is a threshold issue. Because the ALJ does not fully resolve this issue, the court finds that there is not substantial evidence to support the ALJ's mental RFC and ultimate finding that Beckham is not disabled.

### C. Reliance on VE's Projection

Plaintiff lastly argues that the ALJ erroneously relied on the VE's projection regarding available work without the VE having the benefit of his ultimate mental RFC determination. The court agrees. It is well-settled that "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Griffeth*, 217 F. App'x at 429 (quoting *Varley v. Sec. of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)) (internal quotations omitted). This rule

requires that the hypothetical question presented by the ALJ to the VE include the final physical and mental limitations that he accepts as credible. *See id.*

In the instant case, the ALJ merely asked the VE whether there is work for Beckham to do given his limitations as described by Dr. Parker. The problem with this hypothetical is that it is not clear whether Dr. Parker's testimony is consistent with the ALJ's ultimate mental RFC determination as much of Dr. Parker's testimony in the record on Beckham's mental capacity is inaudible. For example, the transcript before the court with regard to his mental condition reads in pertinent part:

> [T]here have been restrictions to activities of daily living due in part, to memory and some difficulty maintaining social functioning, but not at a marked level and as far as we don't have any evidence of record about [INAUDIBLE], and there have been no episodes of these [INAUDIBLE]. And as far as B criteria, again no episodes becomes [INAUDIBLE], there's no evidence of B. Mr. Beckham has been able to [INAUDIBLE] before his accident, after his father [INAUDIBLE]. He certainly has been able to function outside [INAUDIBLE]. The records does not support [sic] either [INAUDIBLE]. The liver problems and hearing problems, but these are subjective, but nothing in my opinion adds to it.

(Tr. at 582-83.)

From what can be understood from the record, it does not appear that Dr. Parker established the same mental limitations as the ALJ ultimately determined. He seemed only to thoroughly discuss Beckham's physical limitations and some limitations with regard to his memory. (Tr. at 582, 584.) From the court's reading of the transcript, Dr. Parker does not discuss his ability to understand directions, relate to others, or respond to novel situations, all of which were part of the ALJ's mental RFC. Thus, the ALJ improperly concluded that 1200 to 1300 jobs were available to Beckham based on the VE's testimony, when she lacked a full description of the ALJ's findings with regard to his mental abilities.

-14-

Moreover, as discussed above, the ALJ's reliance on the VE's projection was further erroneous if he indeed concluded that Beckham was moderately limited with regard to concentration, persistence, or pace as stated in the body of his opinion, as the VE expressly stated that he would not be employable under such a circumstance. Because the ALJ failed to properly present Beckham's mental limitations, as he determined it to be, in the hypothetical posed to the VE, the court finds that the ALJ's reliance on the VE's testimony was erroneous and his determination that jobs were available to Plaintiff was not based on substantial evidence.

Accordingly, the court finds that the ALJ erred in reaching its conclusion that Beckham is not entitled to disability benefits and supplemental security income as it was not supported by substantial evidence. Plaintiff requests that the court reverse the ALJ's decision and immediately award benefits in his favor. However, such a procedure is only proper where "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Facher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Because the court finds that the ALJ did not properly resolve factual issues regarding his mental RFC and failed to present the mental RFC in full to the VE, factual issues remain regarding whether Beckham is entitled to such relief. Accordingly, the court finds that it is appropriate to remand the instant case to the Commissioner for a determination on Beckham's limitations with regard to concentration, persistence, or pace, and to present the mental RFC determination, including this determination, to the VE for a projection on the available jobs for Beckham to perform, if any.

## IV. CONCLUSION

-15-

For the foregoing reasons, the court adopts in part and rejects in part Magistrate Judge Perelman's Report and Recommendations (ECF No. 14) and reverses the decision of the ALJ and remands the case back to the Commissioner to determine Beckham's limitations regarding concentration, persistence, or pace, and whether he would be able to perform jobs based on his mental RFC, as consistent with this Order.

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

September 23, 2009